NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KARINA G. PALOMINO, *Petitioner/Appellee,*

*v.*

BODDY ESCOBEDO, *Respondent/Appellant.*

No. 1 CA-CV 25-0935 FC

FILED 08-03-2026

Appeal from the Superior Court in Maricopa County
No. FN2025-092268
The Honorable Sabra Siedare de Leree, Judge

**AFFIRMED**

COUNSEL

Karina G. Palomino
*Petitioner/Appellee Pro Se*

Poster Law Firm PLLC, Glendale
By Rick D. Poster
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge David B. Gass[1] and Judge D. Andrew Gaona joined.

---

**F O S T E R**, Judge:

**¶1**	Petitioner Karina Palomino obtained an amended order of protection imposing firearm restrictions on Respondent, Boddy Escobedo. Escobedo appeals. Finding no error, this Court affirms.

### FACTS AND PROCEDURAL HISTORY

**¶2**	This Court views the "evidence in a light most favorable to affirming the order." *Vanwormer v. Lopez*, 259 Ariz. 87, 89, ¶ 6 (App. 2025).

**¶3**	Palomino and Escobedo were previously in a romantic relationship. Palomino sought an order of protection after the parties had an altercation at her home ("June 2025 Incident"). In support of the petition, Palomino listed five incidents that took place between November 2023 and June 2025. The incidents included the June 2025 Incident and others, involving arguments, threats, property damage and stalking. Palomino alleged that Escobedo had access to firearms and should not be allowed to possess them for the duration of the order.

**¶4**	The court issued an *ex parte* order of protection prohibiting Escobedo from contacting Palomino or going near her home or work. The court found Escobedo posed a credible threat to Palomino's safety and ordered him to surrender his firearms. Escobedo requested a hearing.

**¶5**	At the hearing, Palomino amended her petition to add that Escobedo attempted to have her "falsely arrested" for assault in September

---

[1] Judge David B. Gass was a sitting member of this Court when the matter was assigned to this panel of the Court. He retired effective June 30, 2026. In accordance with the authority granted by Article VI, Section 3, of the Arizona Constitution, and under A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge David B. Gass as a judge pro tempore in the Court of Appeals for the purpose of participating in the resolution of cases assigned to this panel during his term in office and for the duration of Administrative Order 2026-87.

2024 ("September 2024 Incident"). The court heard testimony from the parties who primarily discussed both the June 2025 Incident and the September 2024 Incident.

**¶6**       Noting the difficulty of the case, the superior court found that Palomino established by a preponderance of the evidence Escobedo committed an act of domestic violence in the last year or had the potential to do so again. Although the court found neither party credible based on inconsistencies in their testimony, it found Escobedo injured Palomino in the June 2025 Incident based on evidence of injuries on Palomino's body. The court also found Escobedo harassed Palomino by making false reports to law enforcement arising out of the September 2024 Incident. *See* A.R.S. § 13-2921(A)(4). To support this finding, the court cited Escobedo's own emails. The court upheld the order of protection, including Escobedo's prohibition from possession and purchase of firearms under federal and Arizona law.

**¶7**       Escobedo timely appealed. This Court has jurisdiction under A.R.S. § 12-2101(A)(5)(b). *See also* Ariz. R. Protect. Ord. P. 42(a)(2), (b)(2).

## DISCUSSION

**¶8**       This Court reviews an order of protection continued after an evidentiary hearing for an abuse of discretion but reviews questions of law *de novo. Shah v. Vakharwala,* 244 Ariz. 201, 202, ¶ 5 (App. 2018). And this Court gives "due regard to the trial court's opportunity to judge the credibility of the witnesses." *Vanwormer,* 259 Ariz. at 89, ¶ 6 (cleaned up).

**¶9**       At the outset, this Court notes that Palomino did not file an answering brief. When an appellee fails to file an answering brief and debatable issues exist, this Court may consider the failure a confession of reversible error but is not *required* to do so. *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 9 (App. 2014). Because the record presents no debatable issue, this Court considers the merits of Escobedo's appeal. *See Banks v. Bailey*, 1 CA-CV 25-0451 FC, 2026 WL 206422, at *2, ¶ 13 (Ariz. App. Jan. 27, 2026) (mem. decision) ("[N]o debatable issue exists when the record clearly resolves the question.") (cleaned up).

**¶10**       To continue an order of protection after a contested hearing, the petitioner must prove her case by a preponderance of the evidence. Ariz. R. Protect. Ord. P. 23(e)(1), 38(g)(3); *Kamma v. Gaun,* 261 Ariz. 413, 415, ¶ 5 (App. 2025). The evidence must show that the respondent either

committed an act of domestic violence within the preceding year[2], or that the respondent may commit domestic violence in the future. A.R.S. § 13-3602(E)(1)–(2).

**¶11** Escobedo makes a cursory argument that the court based the original *ex parte* order of protection on events that occurred more than one year before the petition to support his argument that the court had no substantial evidence to impose the order of protection. Under Arizona Rule of Protective Order Procedure ("Rule") 42(a)(3), a defendant may challenge an *ex parte* protective order by requesting a hearing. Escobedo requested a hearing allowing him to challenge this issue in the superior court. The record shows that court upheld the order of protection solely on the June 2025 Incident, which was within the year of Palomino's filing.

### I. The record supports the court's harassment finding.

**¶12** Harassment constitutes domestic violence when the parties are or were in a romantic relationship. *See* A.R.S. §§ 13-3601(A)(6), -2921. A person commits harassment if the person makes a false report to law enforcement both knowingly and in a manner that harasses. A.R.S. § 13-2921(A)(4). "[H]arass" means "conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed, humiliated or mentally distressed and the conduct in fact seriously alarms, annoys, humiliates or mentally distresses the person." A.R.S. § 13-2921(E); *see also* Ariz. R. Protect. Ord. P. 3(e).

**¶13** The superior court found Escobedo committed harassment because he made a false report to law enforcement. Contrary to Escobedo's argument on appeal, the record supports this finding.

**¶14** A police report from the September 2024 Incident provided Escobedo's description of the fight between the parties. He reported to law enforcement that he and Palomino argued, Palomino became angry and she pointed his gun at him. The officers arrested Palomino based on Escobedo's statements. She was charged with aggravated assault. In later emails to Palomino and the Apache County Attorney, Escobedo admitted that Palomino never verbally or physically threatened him. He admitted to making "false allegations." Palomino testified that the criminal charges caused her severe distress.

---

[2] A court may look beyond one year if the petitioner shows good cause. A.R.S. § 13-3602(E)(2).

¶15  Palomino testified that Escobedo lied to the officers. Her testimony was consistent with statements she made to officers at the scene of the September 2024 Incident. The record supports the court's finding of harassment under A.R.S. § 13-2921(A)(4).[3]

## II. The record supports the court's assault finding.

¶16  The court cited Palomino's injuries from the June 2025 Incident to support its finding of assault. The testimony about the June 2025 Incident conflicted. According to Escobedo, Palomino injured him when she swung his keys at him and then pushed him out the door, causing a nosebleed when the door slammed back into his face. Palomino disputed this account, claiming that Escobedo shoved the door into her legs and caused bruises. This Court does not reweigh the conflicting evidence or determine witness credibility but defers to the superior court, who saw and heard the witnesses testify. *Vanwormer*, 259 Ariz. at 90, ¶ 9. Photos admitted into evidence support the court's finding that Palomino sustained physical injuries as a result of Escobedo's actions during the June 2025 Incident.

¶17  Escobedo also argues that the superior court applied the wrong standard in determining his reckless behavior supports the assault finding. Assault is defined as recklessly causing any physical injury to another. A.R.S. § 13-1203(A)(1). "Recklessly" means

> that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

A.R.S. § 13-105(10)(c).

¶18  Escobedo claims Palomino's injuries were not caused by his conscious disregard of a "substantial and unjustifiable risk" because Palomino was "forcefully eject[ing]" him from her home. He contends his actions were not voluntary or a gross deviation from the reasonable standard of conduct.

---

[3] Because the superior court cited only Escobedo's false reporting to support the finding of harassment, this Court does not address Escobedo's arguments that the emails were not harassing.

¶19 Palomino testified that she opened her door to get Escobedo to leave. She claimed he refused to leave and shoved the door against her legs, causing her injuries. She offered photos showing the bruises to her legs. Escobedo attempts to paint a different version of the events than the superior court found based on Palomino's testimony and the photographs. Again, this Court does not reweigh evidence. Escobedo has not shown error.

## III.   The law supports the court's firearm restriction.

¶20 Escobedo challenges the court's imposition of firearm restrictions, arguing they are improper. He claims the superior court did not ask Palomino about Escobedo's use of or access to firearms and therefore the court could not restrict his possession of firearms. This Court reviews the application of the law *de novo*. *Savord,* 235 Ariz. at 260, ¶ 20.

¶21 Under Arizona law, if a court "finds that the defendant is a credible threat to the physical safety of the plaintiff," it may "prohibit the defendant from possessing or purchasing a firearm for the duration of [an order of protection]." A.R.S. § 13-3602(G)(4). Federal law contains a similar prohibition. Under 18 U.S.C. § 922(g)(8)(C)(i)–(ii), a person subject to an order of protection may not purchase or possess a firearm if the protective order either (1) "includes a finding that such person represents a credible threat to the physical safety of [an] intimate partner or child" or (2) "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury."

¶22 The judicial officer issuing or affirming the order of protection must "ask the plaintiff about the defendant's use of or access to firearms to determine whether the defendant poses a credible threat to the physical safety of the plaintiff." Ariz. R. Protect. Ord. P. 23(i)(1). Escobedo contends that the firearm restriction cannot stand because the court did not ask about firearms as required by Rule 23. He cites *Mahar v. Acuna*, 230 Ariz. 530 (App. 2012), where this Court vacated a firearm restriction on appeal because the judicial officer did not ask about the defendant's access to or use of firearms. 230 Ariz. 535–36, ¶¶ 18, 19, 22. But in *Mahar*, the protective order did not contain the necessary "prohibition of the use, attempted use, or threatened use of physical force against [the plaintiff]." *Id.* at 534–35, ¶ 16 (citation omitted). There was also no evidence that the defendant posed a credible threat to the plaintiff's safety. *Id.* at 535, ¶ 17.

**¶23**          The facts here are different. The superior court did not conduct a direct inquiry under Rule 23(i), which requires the court to inquire "about the defendant's use of or access to firearms." Ariz. R. Protect. Ord. P. 23(i)(1). But the record contains sufficient information to support the court's finding that Escobedo was a credible threat.

**¶24**          Palomino testified that Escobedo had a gun and that during the September 2024 Incident, she grabbed it because she was afraid he would use it against her. Escobedo's attorney confirmed that Escobedo owned multiple firearms. Indeed, his attorney stated that firearms were important to Escobedo as an avid hunter. Thus, the record showed that Escobedo, in fact, had access to firearms, used them regularly and that firearms were present at the first incident. The purpose of the Rule 23(i) inquiry is to assist the court in determining "whether the defendant poses a credible threat to the physical safety of the plaintiff or other protected persons." The court's failure to make a direct Rule 23(i) inquiry was not reversible error based on this record. *Flynn v. Flynn,* 257 Ariz. 1, 5, ¶ 12 (App. 2024) (court's failure to engage in Rule 23(i) inquiry does not always constitute reversible error).

**¶25**          Escobedo also misstates the record in claiming that the superior court made no finding of a "credible threat" to Palomino's "physical safety." The court checked the box finding that "[d]efendant poses a credible threat to the physical safety of Plaintiff." But even so, the protective order also prohibited the use, attempted use, or threatened use of physical force against Palomino that would reasonably be expected to cause injury. This order results in a federal firearm restriction, *see* 18 U.S.C. § 922(g)(8)(C)(i)–(ii). This, together with Palomino's testimony, provided the necessary evidence to support the firearms restrictions under Arizona and federal laws. *See id.*

## CONCLUSION

**¶26**          This Court affirms the order of protection and firearms restriction.